## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **CHERYL DAVIS** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | )     **Case No.** |
| | ) |
| **CUSTOM CONVENIENCE, LLC,** | ) |
| **FRAZIER OIL & L.P. GAS COMPANY** | ) |
| **d/b/a KWIK ZONE** | ) |
| **Defendants.** | ) |
| _____ | ) |

## COMPLAINT

Plaintiff, Cheryl Davis, hereby sets forth her action against Custom Convenience, LLC and Frazier Oil & L.P. Gas Company alleging age discrimination, disability discrimination and retaliation in violation of the Americans with Disabilities Act and Age Discrimination in Employment Act. Plaintiff further alleges violations of the Family and Medical Leave Act (FMLA) in that her rights to FMLA leave were interfered with and she was retaliated against for seeking and receiving leave that was protected by the FMLA.

## JURISDICTION AND VENUE

1.      This Court has original federal question jurisdiction over this action under the federal FMLA, the Age Discrimination in Employment Act and Americans with Disabilities Act. 29 U.S.C. § 2601, 42 U.S.C. § 12101.

2.      Pendant jurisdiction of the Federal Court over Plaintiff's claims under state law is proper as that claim arises out of the same nucleus of operative facts that comprise Plaintiff's claim under federal law.

3. This Court has personal jurisdiction over Defendants because Defendants can be found in, reside in, and/or transact business in this judicial district.

## THE PARTIES

4. Plaintiff is a citizen of Mound City, Missouri.

5. Defendants are Missouri corporations with their principal place of business in Gower, Missouri.

6. Defendant Custom Convenience LLC and Defendant Frazier Oil & L.P. Gas Company are joint employers or integrated employers of Plaintiff under the FMLA as described in 29 CFR § 825.104 and otherwise jointly employed Plaintiff.

## FACTUAL STATEMENT

7. Plaintiff, Cheryl Davis, began her employment with Defendant Custom Convenience LLC and/or Defendant Frazier Oil & L.P. Gas Company (hereafter Plaintiff will refer to Defendants/ her employer as Kwik Zone) in October 2014 as a cashier.

8. Plaintiff's employment was terminated on or about September 25, 2019.

9. At the time of her termination, Plaintiff was 50 years old.

10. In approximately June 2016, Plaintiff was diagnosed with Fibromyalgia, Scleroderma and also suffered from depression.

11. As a result of these conditions Plaintiff began missing work more frequently in the time after June 2016.

12. On information and belief, Plaintiff's absences due to her disabilities and/or serious health conditions were an aggravating factor to her employer.

13. Plaintiff told her supervisor, Andrea Sisk, about her disabilities of Fibromyalgia, Scleroderma and depression.

14. Sisk knew or should have known that Plaintiff was missing work due to serious health conditions.

15. Plaintiff was subject to closer scrutiny with respect to her attendance and job performance than her peers as a result her reported disabilities and/or her age.

16. On information and belief, Sisk began keeping detailed notes about Plaintiff's employment during this time.

17. In April 2019, Sisk approached Plaintiff with concerns that she felt that Plaintiff appeared not to be herself.

18. Throughout Plaintiff's employment, Sisk frequently texted Plaintiff and other staff work related messages including messages regarding staffing issues, such as covering shifts for absences.

19. Plaintiff worked her shift on Sunday, April 28, 2019 and during that shift, calling from a Kwik Zone phone, she called Sisk to advise that she was contemplating taking FMLA leave, but Sisk did not answer and so Plaintiff left a voice message explaining that she would not be able to work on April 29th because she needed to go the doctor and take FMLA.

20. The same day, Plaintiff also sent a text message to Sisk letting her know that she is dealing with some personal issues and is going to see about getting FMLA "tomorrow".

21.     Plaintiff also slipped a note under Sisk's door to similarly advise that she is going to the doctor "tomorrow" to "get FMLA"… "I'm honestly not in a good place right now. Sorry".

22.     As Plaintiff was otherwise scheduled to work on April 29, she also notified the other employee who was scheduled to work with her that day that she would not be at work.

23.     On April 29, Plaintiff went to the physician who placed her on a medical leave for depression.

24.     On April 29, 2019, Plaintiff's physician sent FMLA paperwork via facsimile to Kwik Zone, which paperwork was specifically directed to Andrea Sisk.

25.     The FMLA paperwork advised that Plaintiff's leave was anticipated to last several weeks.

26.     Plaintiff's use of FMLA was an attempt to take an accommodated medical leave of absence to help her address her disability of depression.

27.     While Plaintiff was on FMLA leave, she was in regular contact with Kwik Zone as she continued to make payments to maintain her health insurance.

28.     Plaintiff made attempts to talk to Sisk on Sisk's cell phone on May 2 but was not able to make direct contact.

29.     On or about May 11, Plaintiff called Kwik Zone and spoke to Sisk.

30.     As Plaintiff's return to work approached, she attempted to contact Sisk on May 26, 28 and 30.

31.     On June 3, 2019, Plaintiff inquired with Sisk via text about when she could

return to work.

32.     On June 4, 2019, Plaintiff texted Sisk again advising that she cannot receive phone calls at the time because she did not have a working cell phone or land line.

33.     Sisk never responded nor informed Plaintiff what shift or what day Plaintiff was scheduled to return.

34.     As a result of Sisk never responding, and though Plaintiff was still paying for her Kwik Zone health insurance at this time and into June 2019, Plaintiff applied for unemployment benefits on account of not being given hours to return to work.

35.     At that time, Kwik Zone filed an opposition to Plaintiff's application for unemployment benefits claiming, in essence, that Plaintiff failed to returned to work.

36.     Kwik Zone then proceeded to terminate Plaintiff on or about September 25, 2019.

37.     In making the decision to terminate Plaintiff, Sisk wrote on a "Resignation Notice" pertaining to Plaintiff:

> Cheryl never showed back up for work after FMLA she filed unemployment as per unemployment papers she was disqualified from receiving any unemployment benefits 7/28/2019 please term her now 9/25/19. Andrea

38.     Because of Plaintiff's ongoing disabilities and that she was one of the oldest workers in the workplace, she believes she was discriminated against because of her disabilities, perceived disabilities, her age, and/or because of retaliation.

39.     Plaintiff filed a charge of discrimination with the EEOC on March 16, 2020, which was within 180 days of the September 25, 2019 termination of Plaintiff's employment

by Defendants, and Plaintiff filed this suit within ninety days of receipt of her right to sue letter.

## COUNT I
## DISABILITY DISCRIMINATION AND RETALIATION

40.     Plaintiff hereby incorporates by reference each and every allegation and averment in the preceding paragraphs as though fully set forth herein.

41.     Plaintiff had several disabilities, was regarded as disabled or had a record of disabilities by Defendants.

42.     Plaintiff sought a reasonable accommodation in the form of an accommodated medical leave, but was denied that accommodated leave in that the leave was not given in good faith, and Defendants acted in ways to prevent Plaintiff from coming back to work at the conclusion of her leave despite Plaintiff's reasonable efforts to return to work.

43.     Defendants illegally discriminated against Plaintiff and subjected her to increased scrutiny and illegal termination, and Plaintiff's disability was an important factor to such treatment.

44.     Plaintiff engaged in protected activity by requesting an accommodation for her disability and was terminated on account of her protected activity.

45.     Plaintiff suffered retaliation and discrimination in the form of disciplinary actions, mistreatment, and termination.

46.     Defendants' actions constitute unlawful employment discrimination and retaliation against Plaintiff in violation of the Americans with Disabilities Act.

47.     As a direct result of the unlawful conduct of Defendants, as set forth herein, Plaintiff has suffered damages which include lost wages and benefits, mental anguish, emotional distress, pain and suffering, a detrimental job record, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep, and other nonpecuniary losses, all of a continuing nature.

48.     The conduct of Defendants was outrageous and evidenced an evil motive or reckless indifference for the rights of Plaintiff and the rights of others, entitling Plaintiff to an award of punitive damages.

49.     Plaintiff is also entitled to recover all of her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, for actual, compensatory and punitive damages, all costs, expenses and attorneys' fees incurred herein, for appropriate equitable relief, for interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

## COUNT II
## AGE DISCRIMINATION

50.     Plaintiff hereby incorporates by reference each and every allegation and averment in the preceding paragraphs as though fully set forth herein.

51.     Defendants illegally discriminated against Plaintiff and subjected her to increased scrutiny and illegal termination, and Plaintiff's age was an important factor to such treatment.

52.     All actions or inactions of or by Defendants occurred by or through their agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

53.     Defendant's actions constitute unlawful employment discrimination against Plaintiff in violation of the Age Discrimination in Employment Act.

54.     Plaintiff's age and/or complaints of illegal discrimination contributed to Defendant's discriminatory and retaliatory conduct against Plaintiff in violation of the Americans with Disabilities Act.

55.     As a direct result of the unlawful conduct of Defendants, as set forth herein, Plaintiff has suffered damages which include lost wages all of a continuing nature.

56.     The conduct of Defendants was willful entitling Plaintiff to an award of liquidated damages

57.     Plaintiff is also entitled to recover all of her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, for actual and liquidated damages, all costs, expenses and attorneys' fees incurred herein, for appropriate equitable relief, for interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

## COUNT III
## VIOLATION OF THE FMLA – INTERFERENCE AND RETALIATION

58.     Plaintiff hereby incorporates the foregoing paragraphs by reference.

59.     Defendants operation was covered under the FMLA.

60.     Plaintiff was an individual who was eligible to receive FMLA.

61.     Defendants' employees were eligible to take FMLA leave provided they met the statutory requirements for minimum term and hours of employment, and needed to care for their own serious health condition.

62.     Plaintiff suffered from serious health conditions that permitted, under her physician's direction and guidance, time off from work.

63.     Defendants, though on notice of Plaintiff's need for leave protected under the FMLA, (which notice was given at various times throughout her employment, with and without specific reference to the FMLA) interfered with Plaintiff's rights by refusing to timely process her FMLA request, refusing to give her statutory individual notice of her rights, and other notices, and ultimately, refused to return Plaintiff to work and then terminated her employment.

64.     Plaintiff was damaged by Defendants' acts because she could not intelligently exercise her FMLA rights or protect her rights under the FMLA.

65.     Defendants retaliated against Plaintiff for her invoking her FMLA rights by taking disciplinary action against her, including termination.

66.     As a direct and proximate result of Defendants' conduct, Plaintiff has sustained and will continue in the future to sustain damages in the form of lost income.

67.     Defendants knew that Plaintiff was entitled to FMLA leave, but acted willfully in both inhibiting her from receiving full benefits and notice of her FMLA rights and otherwise retaliating against her for exercising her FMLA rights.

68.     Plaintiff is entitled to economic damages, liquidated damages, pre and post-judgment interest, attorneys' fees and any other relief the Court deems just and equitable.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, for actual, liquidated, compensatory and punitive damages, all costs, expenses and attorneys' fees incurred herein, for appropriate equitable relief, for interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

## DEMAND FOR JURY AND PLACE OF TRIAL

Plaintiff hereby demands a jury trial to be held in Kansas City, Missouri.

Respectfully Submitted,

By:   /s/ Kevin C. Koc            .
        Patrick G. Reavey MO#47365
        Kevin C. Koc MO#56955
        REAVEY LAW LLC
        Livestock Exchange Building
        1600 Genessee, Suite 303
        Kansas City, MO 64102
        Ph: 816.474.6300
        Fax: 816.474.6302
        Email: preavey@reaveylaw.com
        Email: kkoc@reaveylaw.com
        Website: www.reaveylaw.com
        ATTORNEY FOR PLAINTIFF